Good morning, Your Honors. Good morning. Good morning. May it please the Court. After reading- Could you identify yourself for the record, please? James Crawford for the appellant. Thank you. As the Court probably should be aware by now, I believe the appellee has essentially conceded that there was an error under P.H.U. and that the jury was erroneously instructed. Right. So the question is harmlessness, and I'll get right to the heart of where my concern is with your argument. As the prosecutor stated to the jury with respect to the gang special circumstance, this enhancement requires that the defendant have an intent to kill, and the instructions were to that effect as well. The jury unanimously found that to be true. So why don't we know for sure that that is the mental state that the jury found and not the sort of no longer valid, natural, and probable consequence? Well, I think if we look at the cases, I'm hoping the Court, about a week ago, I submitted the- Right. I don't want to hear about the cases. I want to hear about the logic of what I just said. What's wrong with that? Well, I believe that the jury's finding is still flawed, and because the jury was told explicitly by the prosecutor during her argument that four of the jurors could have found the defendant was the actual perpetrator, four of them could have found that he was a direct aider and a better, and four of them could have found that he was guilty under the theory of natural and probable. In theory, that's correct, but in the face of that special finding in which all of them found an intent to kill, it's merely theoretical and no longer actual as a possibility. That's my concern. Well, I believe Reyes v. Madden addressed that concern, and that was the recent decision by the Ninth Circuit, and we submitted that in the 28J letter last week. In Reyes v. Madden, I believe the facts in Reyes are even more pronounced than they were in this case. There was a shooting in that case? Yes, there was, Your Honor. There was a shooting. Apparently, the defendant had detained the victim and was beating him, and then the gunman arrived and then shot the victim. The state courts, unlike this case, the state courts in Reyes actually made a... The big difference there, of course, is that it was a joint trial, and the concern, it seems to me, as I understood it, was how that might slop over and made it ambiguous as to what happened. And here we have no joint trial, correct? That's correct. Okay. But in Reyes, Your Honor, if I may, the jury was similarly instructed that they could reach a verdict of guilty under a natural and probable consequence theory. The court noted that the special circumstance instruction did not include the language willfulness premeditation and deliberation. We have the same deficiency in this case in that the special circumstance instruction did not include that language. I believe that what makes Reyes, though, a little bit more pronounced than this case is in Reyes, the state courts had actually made findings. This case, as the appellee has acknowledged, the state court, we filed the habeas writ in the superior court. We eventually added the true claim. It was summarily denied. A subsequent habeas corpus writ was filed in the fourth appellate district in Santa Ana. That writ was summarily denied. And then a writ was filed in the California Supreme Court, and that writ was summarily denied. There's never been a finding by the state courts that the true error was harmless beyond a reasonable doubt under the Chapman standard or that the error was ever harmless. In fact, when the appellee filed its brief in this case, excuse me, when they filed the return to the habeas corpus writ in the district court, they initially had argued that there was no true error. So what was and what was not true error at the time that the case was pending in the state courts was still yet to be decided. As the appellee felt comfortable raising in their return that there was no true error. It was not until the court granted the certificate of appealability and that we were then before this Court that the appellee actually acknowledged that there was error under true. In Reyes, though, the state court actually made an explicit finding that the defendant was a direct aider and a better, and that finding was made by the state court in concluding that the true error was harmless beyond a reasonable doubt. In this case, there was never such a finding by the state court that Mr. Nguyen was a direct aider and a better. There's never been an explicit finding that he was a direct aider and a better. If we look at the findings by the district court in this case, the court basically stated that Mr. Nguyen had a mop handle, which was not the murder weapon. The murder weapon, according to the findings that are in the district court decision, was a baseball bat. Mr. Nguyen was among 12 to 15 people that were there. One witness said he was on top of a car. So he was certainly at least 10 feet away, 15 feet away from the altercation that turned into being a fatal altercation, which would have substantially undermined a finding that he was the principal. Certainly it undermined the finding that he was the principal. I believe it's basically conclusive at this point that he was not the principal. So the only question is, is whether or not he could have been found culpable as an aider and a better. Is he the only one that went to trial? Yes, Your Honor. But the case had been stale or cold for approximately eight years. There was a possible identification, which we sought to challenge in the habeas writ, but for whatever reason, law enforcement didn't even arrest Mr. Nguyen until about eight years later in 2009. And then the case, I believe, went to trial around 2010, 2011. However, that was an eight-year period where there was no arrest and there was no attempts to indicate who the other suspects could have been. But the witnesses did indicate that there was anywhere from 12 to 15 people. Originally there was a group of four that had originally instigated the altercation. There's no indication whether Mr. Nguyen was one of that group of four or was he one of those 12 or 15 other people. So what was his role and what was his participation? He certainly was not the actual killer, based, I believe, on the evidence that's now been unraveled at this stage of the matter. However, was he a direct aider and a better? If you listen to that one witness, he was up on top of a car with a mop handle. That would not have made him a direct aider and a better. He didn't hold the victim down. He didn't do anything to assist, aid, abet, or direct. There was no taunting. There was no language like kill him, kill. There was nothing along those lines. Counsel, in terms of how we, through what lens we examine this, isn't it so that all we have to determine that the state court reasonably could conclude that the error was harmless beyond a reasonable doubt, we don't necessarily have to reach that conclusion independently. Is that your understanding? Because we're looking at a habeas case here? Your Honor, I believe, well, at the state court level, the state court analysis is whether or not the error was harmless beyond a reasonable doubt. Right. And so we don't review that de novo. We don't decide for ourselves whether we think it was harmless. I agree. I believe the appropriate standard that the court needs to apply is under Brett v. Abramson, and that's whether or not the error, the true error, had a substantial and injurious effect on the decision in this case. And I believe it did have a substantial effect. This isn't just some minor technicality. This is whether or not the jury, all 12 of those jurors, could have unanimously found beyond a reasonable doubt that Mr. Nguyen was a direct aider and abetter and aided, abetted, assisted, or encouraged in the homicide of Mr. Lee. And there was no evidence that Mr. Nguyen directly aided and abetted. The evidence that he was even there was specious, as he may have made an admission that he was at the mall, but he indicated he wasn't there on Thanksgiving. And so his presence there was one issue. Whether or not he directly aided and abetted the homicide, as we've indicated in previous briefings, we don't believe the evidence was substantial in that regard. And- What about the admission of kicking someone? There was the admission, but he said that it was a different event and it wasn't on Thanksgiving. And that's inconsistent with his alibi. So whether he was there or whether he was not really, though, at this point in time, the question is, if he was just merely an aider and abetter and he was found guilty based on the natural and probable consequence theory as not a direct aider and abetter, but as an indirect aider and abetter, then that would have been harmless, harmful error, and that error would have been substantial, and it would have been injurious, because the prosecutor told the jury, if even one of you- Well, he said four, four, and four. That's how she broke it down. I'm trying to save myself a little. Yeah. You may reserve it if you'd like to save a little time. But the prosecutor did indicate that even if four of you jurors found him culpable just merely on the natural and probable consequence theory, that's enough, and have the other jurors reach their decision. That, under the Reyes decision and the Brown decision, was why the Court found that the error was not harmless beyond a reasonable doubt, because even one of those jurors, if they found that he was culpable under the natural and probable consequence theory, that would have been enough to find him culpable for a first-degree murder, and that would have been enough to get to the special circumstance. And the Court said the special circumstance did not have the premeditated deliberate language in there, and the Court, the other panel found that- But it's inconsistent with the natural and probable consequences theory, because it requires the intent to kill. It does. But the Court still found that error not to be harmless beyond a reasonable doubt. No, I understand. I understand. I mean, based on that, I believe that the people, the government, cannot prove that the error was harmless at the state level, beyond a reasonable doubt. And I believe that we have established under Abramson versus Breck that there was a substantial and injurious effect on the decision, warranting the Court to send the matter back with directions to grant the writ. Thank you, counsel. Sorry, I'm running late. Thanks. May it please the Court, Daniel Rogers for Respondent. Let me begin with Reyes as a jumping-off point for the analysis. Because counsel is correct that another panel of this Court did conclude that the intent to kill is not necessarily synonymous with willful, deliberate, and premeditated murder. They are- And it's a non-presidential opinion. Yeah, that's correct. But the intent to kill is nonetheless instructive of what the jury actually found in this case. Calcrim 521, which is the instruction that was given to the jury that defines willful, deliberate, and premeditated murder for them, willful is defined as the intent to kill. So we have the special circumstance finding that required the unanimous jury determination that the defendant acted with the intent to kill. So we're one-third of the way there with premeditation and deliberation. Now, deliberately is carefully weighing the considerations for and against. Premeditation is deciding to kill before the acts. So if we go beyond just the special circumstance finding of the intent to kill and look at the surrounding facts and circumstances in the case, I think we can determine that the jury, which had already found that the defendant was acting with the intent to kill, which, as Judge Graber pointed out, is inconsistent with the idea of the natural and probable consequences theory, that this was a fight that mushroomed out of control. In this case, there's the initial gang challenge. Reinforcements arrive. Those reinforcements, including the defendant, are armed. They wait for the victims outside the location. On a prearranged signal, a whistle in this case, they attack. At least two witnesses see the defendant with the mop handle swinging at people. He's on the car while Tay is on the ground near a car. I don't know that this record necessarily establishes conclusively a particular distance. I think I heard the figure 15 feet tossed out. I don't know where that comes from. Certainly, I think, based on the evidence that was presented to the jury, the jury could conclude that the defendant is on the car warding off any aid that might be given to Tay while his cohorts take care of gang business and basically beat Tay to death on the ground near a car. I think that's the state of the evidence. What is your view of our standard of review? The standard of review, this is an APPA case. I think that the idea that counsel raised, that there's never been a finding by the state court, is not necessarily accurate in that Harrington versus Richter tells us that when we have a summary denial, a denial with no statement of intent. We have to imagine all the rational things that the court could have been And certainly, one of those is that the court could have found this error harmless beyond a reasonable doubt. And again, I would posit that the reason for that is the intent to kill, which is inconsistent with the natural and probable consequences theory, coupled with the other facts and circumstances in the case, the laying in wait, the arming, the reinforcing, the gang culture. Repeatedly during his police interviews, Petitioner acknowledges knowing that gangs fight, and he's not a novice to gang activity, and he certainly can't pretend that he doesn't know what happens when gang members attack victims with weapons. Is it automatically presumed, however, with the gang circumstance that there is an intent to kill? Is it automatically presumed? Yes. I mean, I think Because we don't know who struck the blow in this case. Well, I think the instruction that was given required the jury to find that the defendant intended to kill. So I think, I don't know that I would call it a presumption necessarily, but I think based on that, we have to conclude that the jury followed the instructions that they were given and made the requisite unanimous finding that the defendant acted with the intent to kill. Whether he was the actual killer or not, he intended that the killing occur. I mean, that's the finding that the jury made. It's what we're left with. Or that's what we, that's one interpretation of what we might find. Okay. I don't, I think it's the most, certainly the most logical, the most consistent with the evidence that was presented. The other thing I would note is that the jury here was presented with essentially two choices. They have the prosecution's version of events and the version that is testified to by the prosecution's witness, which is that petitioner was there, had the mop handle, participated in the fight, was on the car, all of that. The defense is he wasn't there at all. The defense is that he's celebrating Thanksgiving with Frank Hahn and Cynthia Bui, that when he was talking to the police, he was confused about which fight he was talking about and that he was actually describing a different fight. The jury necessarily rejected that version of events when they found him guilty. I mean, they obviously, in order to return the verdicts they did, had to conclude that he was present, that he participated, etc. So this isn't a case where the defense was that the defendant had some lesser mental state than premeditation and deliberation. The prosecutor presented the natural and probable consequences theory as an alternative. When one looks at the argument, first-degree murder as a direct perpetrator is argued first. Then the prosecutor says, if you don't think that's what happened, then we get to direct aiding and abetting, and then if you don't think that's what happened, there's this natural and probable consequences theory. Now, as Judge Graber pointed out, yes, the prosecutor argued to the jury that they didn't have to be unanimous on which theory they chose, but again, that's prior to the verdict. That's a potentiality. Once they decide their verdict, we can look at that special circumstance finding and conclude that they never went down to get the last step. Yes, yes. So I think those are the points that I wanted to make. Unless the Court has additional questions, I would be prepared to submit them in the brief. Thank you. I think we don't. You used your time, but you may have one minute for rebuttal if you want it. I appreciate it. Thank you, Your Honor. I just want to refer back to the People v. Brown decision. In the People v. Brown decision, there was at least two participants at that time. The Mr. Martinez was awarded a six-year offer in exchange for his testimony against the defendant. In Brown, Mr. Martinez actually testified that Mr. Brown was the actual perpetrator, the actual shooter, rather than an aider and abetter. And he was – when there was actually evidence that Mr. Martinez was actually the gunman and actually the shooter. And the jury was given a theory that he was the direct shooter, as Mr. Martinez had testified to. The jury was given an option of finding Mr. Brown was the direct aider and abetter. And they were also given the option to find Mr. Brown guilty under the natural and probable consequence theory. The Court found – the jury found the defendant guilty, and they found the special circumstance to be true. The Court found that the true error was not harmless beyond a reasonable doubt, in part because of the credibility of Mr. Martinez, and significantly because of the way the jury was divided, telling they could find guilt on those three theories. Thank you, counsel. Unless the Court has any questions, I would submit. Thank you. The case just argued is submitted, and we appreciate helpful arguments from both counsels.
judges: Schroeder, Graber, Watson